COMMONWEALTH *vs.* JAMES P. LYNCH.

Essex.    November 8, 1893. — January 3, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Illegal keeping of Intoxicating Liquors.*

If A. keeps in B.'s house liquors which A. intends to sell without authority of law, and B. keeps and maintains his house, which is so used with his assent for that illegal purpose, B. is punishable under Pub. Sts. c. 101, §§ 6, 7, and it is immaterial that he does not intend to sell the liquors himself.

COMPLAINT, charging the defendant with maintaining a liquor nuisance in Lynn, between February 1, 1893, and March 31, 1893. Trial in the Superior Court, before *Sherman*, J., who reported the case, at the defendant's request, for the determination of this court, in substance as follows.

The evidence of the Commonwealth showed that, on March 10, 1893, the defendant had in his tenement, which was used by him as a dwelling-house for himself and family, thirteen quarts of whiskey in thirteen quart bottles, one lager beer bottle containing lager beer, and one empty beer bottle, kept in the pantry. The house was about one hundred and fifty feet distant from a

house occupied by one Cunningham. On Sunday, March 12, 1893, a woman was seen to go several times from Cunningham's to the house occupied by the defendant. She went into the house of the defendant, and stayed there but a very few minutes each time, when she returned to Cunningham's house. There was no evidence that she carried anything on her person.

Cunningham was tried on a separate complaint, for maintaining a liquor nuisance in his place, from December 1, 1892, to March 31, 1893, and was convicted.

One Lee, an officer, testified that when he served a notice on the defendant concerning the liquors taken from his house, the defendant told him that the liquor was his. One Wells testified that the defendant told him that he bought the liquor taken from his house at one Heffernan's, and that it was his, and that he had it for his own use. There was no evidence tending to show that the defendant ever sold liquor, or that he kept it intending to sell it personally, but there was evidence tending to prove that the intoxicating liquor found in the defendant's house belonged to Cunningham, and was kept in the defendant's house with the intent on the part of both Cunningham and the defendant that it should be sold by Cunningham in his house, for his sole profit, in violation of law.

The defendant asked the judge to rule that, upon this evidence, the jury should be directed to acquit the defendant. The judge declined so to rule; and the jury returned a verdict of guilty.

If the ruling was erroneous, the verdict was to be set aside; otherwise, it was to stand.

*J. H. Sisk*, for the defendant.

*W. H. Moody*, District Attorney, for the Commonwealth.

ALLEN, J. Whoever keeps or maintains a building, place, or tenement used for the illegal keeping of intoxicating liquors, is punishable by Pub. Sts. c. 101, §§ 6, 7. Keeping intoxicating liquors for sale is illegal, except when such keeping is authorized by law. Pub. Sts. c. 100, § 1. Cunningham kept in the defendant's house liquors which he intended to sell without authority of law; hence such keeping of liquors by Cunningham was illegal. The defendant's house was used by Cunningham for such illegal keeping of liquors. The defendant kept and maintained his house, which was so used with his assent for that

illegal purpose.   It is immaterial that the defendant did not intend to sell the liquors himself.   He kept his house as a receptacle for Cunningham's liquors, with intent to aid Cunningham's illegal sales; and by so doing he became punishable under Pub. Sts. c. 101, §§ 6, 7.                                       *Verdict to stand.*