**TOOLE et ux. v. MORRIS-WEBB MOTOR CO., Inc.**

**No. 16761.**

Court of Appeal of Louisiana. Orleans.

April 18, 1938.

R. A. Dowling and Henry J. Wyman, both of New Orleans, for appellants.

St. Clair Adams & Son, of New Orleans, for appellee Blankenship Motors, Inc.

WESTERFIELD, Judge.

The parents of the deceased minor, Bernard Toole, originally sued Paul E. Burns of Biloxi, Miss., and the Morris-Webb Motor Company, Inc., of Gulfport, Miss., in solido, claiming $11,234, as damages for the negligent killing of their minor son. By supplemental and amended petition, the suit against the Morris-Webb Motor Company, Inc., was abandoned and the Blankenship Motors, Inc., of New Orleans, La., substituted as codefendant. The plaintiffs allege that on May 30, 1936, their minor son, Bernard Toole, was seated on the curbing of the sidewalk of Perrier

near Upperline street, when an automobile driven by Paul E. Burns ran into and killed him; that Burns had purchased the automobile from the Blankenship Motors, Inc., from which company he had obtained a set of dealer's number plates without which he could not have driven the automobile in the city of New Orleans; that it was well known to the said Blankenship Motors, Inc., its agents, and employees at the time they loaned the license or number plates to the said Burns, that he did not know how to drive an automobile, and had no knowledge of its mechanism.

Judgment was rendered against Paul E. Burns by default, and no appeal has been taken by him. Blankenship Motors, Inc., filed an exception of no cause of action which was maintained and plaintiffs' suit dismissed. From this judgment they have appealed.

It is contended on behalf of defendant-appellee that it is not responsible for the negligence of its customers, or for their ignorance of the mechanism or method of driving the cars they purchase, and that to hold otherwise would be to impose a responsibility upon the vendors of automobiles so great as to render the conduct of their business unprofitable and impossible. It is not the business of the seller of an automobile, says counsel, to inquire into the capacity of the purchaser to drive it any more than it is the obligation of the vendor of guns and ammunition to ascertain whether the purchaser is familiar with the use of the weapons. With this contention we quite agree, but according to the allegations of the present suit the Blankenship Motors, Inc., loaned one of its license plates to Burns in order to enable him to undertake to drive the car through the streets of the city of New Orleans when it knew that Burns knew nothing about driving the car; a totally different proposition.

Act No. 20 of 1932, in section 15(a), provides that a manufacturer of or dealer in automobiles, in lieu of registering such vehicles, may obtain from the Secretary of State by the payment of a registration fee, one or more "number plates," which may be transferred from one vehicle to another. Subparagraph (b) provides that these license plates, so obtained, shall not be used or be permitted to be used for "other than for bona fide demonstration or delivery purposes." Subparagraph (c) reads as follows: "No manufacturer of or dealer in motor vehicles, trailers * * * shall cause or permit any such vehicle owned by such person to be operated or moved upon a public highway without there being displayed upon such vehicle a number plate or plates issued to such person, except as otherwise herein authorized."

It is contended on defendant's behalf that it is charged with nothing more than allowing its license plates to be used for delivery purposes, something expressly authorized by law. On the other hand, plaintiffs' counsel insist that the allegations of the petition, which for present purposes must be accepted as true, make out a case involving a violation of the statute. We do not regard this question as important for, as we see it, if the action of defendant in lending its number plates to one, who, to its knowledge, did not know how to drive, may be considered as the proximate cause of the accident, defendant is responsible whether in so doing it violated the provisions of any particular statute or not, and conversely if defendant's action in lending the license plates was illegal without such action being a proximate cause of the accident, it is of no consequence.

We are referred to the case of Davis v. Shaw, 142 So. 301, 305, a case decided by our brethren of the Second circuit, in which it was held that the allegations of the plaintiff's petition to the effect that Mrs. Shaw, the defendant, had permitted her nephew, Oscar L. McLain, to use her automobile, with the knowledge that he "was and is a careless, reckless and incompetent driver of an automobile," did not state a cause of action as against Mrs. Shaw for damages resulting to the plaintiff as a consequence of the negligence of Oscar L. McLain. It is true that in that case the automobile belonged to Mrs. Shaw and was loaned to her nephew who was alleged to be incompetent, while here the automobile is alleged to have been purchased by Burns, the negligent driver; but we find no difference in principle since the basis of the present suit is the alleged negligence of the vendor of the automobile in loaning its license plates and thus enabling the negligent Burns to drive the car which killed plaintiffs' child. In the cited case the court quoted from Corpus Juris, Volume 42, page 614, to the effect that a motor vehicle is not in itself a dangerous instrumentality, and "cannot be placed in the same category as ferocious animals, locomotives, gun powder, dynamite," etc.; consequently, the rules of law applicable to such dangerous

instrumentalities generally do not apply. It was recognized, however, in the decision that the rule permitted of exceptions where, for example, an owner permitted it to "be operated by very young, or inexperienced, persons, by insane persons, inexperienced drivers, or by doped or drunken persons, or by other persons similarly incompetent, such automobile may become a dangerous instrumentality or agency, and the law applicable to such dangerous machines may apply. And, where an owner of a motorcar, knowing of such condition existing either in the car itself or the driver to whom he intrusts the use of such car, may be so negligent in permitting his automobile to be operated on the public highways in such condition, or by such person, as to be held responsible in damages for the negligent operation of such automobile." But the court held that the allegations of the petition in that case did not state a cause of action, because "to make such an allegation sufficient to even state a cause of action in a case of this nature, general averments that the driver had previously driven recklessly alone cannot be sufficient, but at least the circumstances and places where such previous occurrences were alleged to have happened must be set out in detail. In other words, one may have knowledge of a driver having on previous occasions driven at an excessive speed, and of having previously experienced an accident, and still not be considered negligent, if he gratuitously permits such a driver to operate his car for the sole benefit and purposes of such driver." In other words, the conclusions of the pleader will not supply necessary allegations of fact. Here the allegations are to the effect that the driver did not know how to drive. There was, therefore, no need of specification.

In Baader v. Driverless Cars, Inc., 10 La.App. 310, 120 So. 515, we held that a corporation which rents an automobile to a drunken driver is liable for the damages sustained by a pedestrian due to his negligence upon the principle that one who intrusts to incompetent hands a potentially dangerous agency, such as an automobile, is responsible for the mischief done.

In 5 Blashfield's Cyclopedia of Automobile Law and Practice, § 2924, we read:

"An automobile, though not dangerous per se, is, in the hands of a person having no knowledge of how to drive it, a dangerous machine to turn loose on busy streets, and though, as a general rule, in the absence of statute, an owner of a motor vehicle is not liable for injuries to third persons from its negligent use by another, to whom he loans or intrusts it for the latter's purposes, an exception to the rule exists where the owner loans his machine to one who is so reckless, heedless, or incompetent in his operation of the vehicle loaned as to render it, while in his hands, a dangerous instrumentality, especially where the one to whose charge the car is committed is prohibited by statute from operating it.

"In such case the owner is liable for the driver's negligence in the operation of the machine, if he knows, at the time he so intrusts it to him, of the driver's character and habits, with respect to operating automobiles or of his incompetency, or if he should know such driver to be reckless or incompetent, and for all injuries naturally and probably resulting from such driver's recklessness or incompetency. The liability in such instances rests not upon the fact of ownership, but upon the combined negligence of the owner in intrusting the machine to an incompetent and reckless driver and of the driver in its operation. * * *

"As already indicated, an automobile owner is not negligent in permitting an inexperienced or incompetent person to drive the machine, unless he has knowledge or notice of such person's want of necessary skill. An owner lending or renting his automobile must, however, make reasonable investigation to determine whether or not the borrower or renter is an ordinarily competent operator, and may escape possible subsequent liability for the negligence of the borrower or lessee by making reasonable investigation as to the latter's competency as a driver or accepting a certificate upon that point issued by the proper authorities. * * *"

In McDonald v. Dundon, 242 Mass. 229, 136 N.E. 264, 265, 26 A.L.R. 1243, the Supreme Judicial Court of Massachusetts had before it a case remarkably similar to this one. A licensed automobile dealer by the name of Rawson had five number plates issued to him under a Massachusetts statute resembling the law of Louisiana in that respect. A man by the name of Dundon had purchased a secondhand automobile and placed it in "Rawson's garage" for repairs. Dundon had not registered his automobile, and when the repairs were completed he requested and obtained the use of one of Rawson's license plates which he placed on

his car, in order to drive it away. While driving the car through the streets of Boston, an accident happened. There was no allegation or proof that Rawson knew that Dundon was an incompetent driver, and "the machine was neither owned nor controlled by Rawson at the time of the accident; it was in the possession and the control of Dundon as owner, but it was not registered in his name. The license issued to Rawson and the number plates loaned by him and attached to the car offered no protection to Dundon; the plates could not lawfully be loaned; the only use which Rawson as a dealer was permitted to make of them was to attach them to cars which he owned or controlled. It is obvious that at the time of the accident the car was not only owned and operated by Dundon but was under his sole and exclusive control. It follows that it was not legally registered and was a nuisance upon the highway and Dundon in operating it was a trespasser. Dudley v. Northampton Street Railway, 202 Mass. 443, 89 N.E. 25, 23 L.R.A.,N.S., 561; Gould v. Elder, 219 Mass. 396, 107 N.E. 59; Fairbanks v. Kemp, 226 Mass. 75, 115 N.E. 240; Koonovsky v. Quellette, 226 Mass. 474, 116 N.E. 243, Ann.Cases 1918B, 1146; Evans v. Rice, 238 Mass. 318, 130 N.E. 672; Pierce v. Hutchinson, 241 Mass. 557, 136 N.E. 261."

In discussing the liability of Rawson, the court said:

"It is a general rule that all persons who contribute to or participate in the creation of a nuisance are liable for all injurious consequences proximately resulting therefrom to individuals. It is not necessary, where a person is charged with criminal liability for a nuisance, to show that he committed the particular act that creates the nuisance; it is sufficient if he contributed thereto. Accordingly it has been held by this court that the owner of a building leased to another for the purpose of illegal keeping and sale of liquors is criminally liable, although he did not intend to make any sale himself. Commonwealth v. Reed, 162 Mass. 215, 38 N.E. 364; Commonwealth v. Hayes, 167 Mass. 176, 45 N.E. 82.

"The defendant Rawson admitted that Dundon requested the use of the number plates to attach to the car to bring it from Cambridge to Boston and that he loaned them for that purpose. He knew, or at least is presumed to know, that the operation of the machine upon the highway with his number plates upon it was illegal and would create a nuisance. He must have contemplated the natural and probable result of his act in lending the plates and the operation of the car thereafter by Dundon. The jury could have found that Rawson's act contributed to the creation of a nuisance in violation of the rights of travelers upon the highway, that if injury was caused to any person lawfully traveling upon the way by reason of the operation of the automobile that those who were responsible for its presence there would be held liable, that he intentionally assisted and participated in the creation of the nuisance and is liable for any injurious consequences resulting therefrom."

It is true that the court held that Rawson had violated the statute of Massachusetts, and that we have said elsewhere in this opinion that the question of whether the Louisiana law had been violated was not important. It is not necessary, we repeat, that the defendant in this case should have been held to have violated the statute, the controlling factor being whether its action in loaning its license plates to an inexperienced driver, one who did not know how to drive, was negligence which proximately contributed to the accident. A mere violation of law would not render the defendant liable unless it contributed to the accident which caused the damage for which the plaintiff seeks reparation. In our opinion one who makes it possible for another to drive an automobile through the streets of a populous city knowing that he is incapable of doing so is, at least, as culpable as one who rents an automobile to a drunken driver. We held in Baader v. Driverless Cars, supra, that the latter was responsible for the damage caused by the drunken driver, and we can see no difference in principle between that case and the case now before us.

Our conclusion is that the exception of no cause of action should have been overruled.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that the exception of no cause of action be, and the same is hereby overruled, and this cause remanded to the Civil district court for the parish of Orleans for further proceedings according to law and not inconsistent with the views herein expressed.

Reversed and remanded.

McCALEB, J., absent.